IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOSEPH D. CHAPMAN,

      **Plaintiff,**

v.                                        **Civil Action No. 3:15cv679**

ASBURY AUTOMOTIVE GROUP, INC.,

      **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Asbury Automotive Group, Inc.'s ("Asbury") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),[1] (ECF No. 3), and Asbury's Amended Memorandum in Support, (ECF No. 6). Plaintiff Joseph D. Chapman ("Chapman") responded, (ECF No. 10), and Asbury replied (ECF No. 11). This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1332.[2] For the reasons that follow, the Court will grant Asbury's Motion to Dismiss. (ECF No. 3.)

## I. Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952

---

[1] Federal Rule of Civil Procedure 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

[2] The parties are diverse, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

(4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those stating a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citations omitted).

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Laughlin v. Metro. Wash. Airports Auth.*,

149 F.3d 253, 260–61 (4th Cir. 1998); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citing *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *Gasner v. Cty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)).

Chapman attached the following to his Complaint: (1) an "Asbury Automotive Group, Inc. Amended and Restated 2002 Equity Incentive Plan Restricted Share Award Agreement for GM Equity Incentive Program (Cliff Vesting)" (the "Award Agreement"), (Compl. Ex. 1, ECF No. 1-4); and, (2) a Common Stock Certificate of Asbury Automotive Group, Inc., (Compl. Ex. 2, ECF No. 1-5). This Court will consider the exhibits because the documents are central to the claims, are sufficiently referred to in the Complaint, and neither party contests their authenticity.[3] *See Witthohn*, F. App'x at 396–97 (citations omitted).

## II. Factual and Procedural Background

### A.      Summary of Allegations in the Complaint[4]

Asbury owns the Crown Platform, one of its several companies that operate car dealerships. Chapman commenced employment with Asbury as an automobile sales associate in the Crown Platform in October 1999. Over the next six years, Asbury promoted Chapman

---

[3] Asbury relies on these documents to buttress its position.

[4] For purposes of the Motion, the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Chapman. *Matkari*, 7 F.3d at 1134.

several times.  In 2005, he became the General Manager of Crown Richmond BMW in Midlothian, Virginia.

At a company-wide recognition dinner in March 2011, Asbury honored Chapman and seven other general managers for top performance based on customer satisfaction, vehicle sales, and dealership profitability.  Asbury also awarded Chapman 4,000 restricted shares of Asbury stock (the "Restricted Shares").  The Award Agreement governed the stock share award and placed restrictions on the shares, including limitations on transfer, risks of forfeiture, and vesting of Chapman's rights to the shares.  Section 3(a) of the Award Agreement states, in pertinent part:

> The Grantee's rights with respect to the Restricted Shares shall become fully vested, and the restrictions set forth in this Award Agreement shall lapse, on the third anniversary of the Grant Date (the "Vesting Date"); provided that the Grantee must be employed as of such Vesting Date, except as otherwise determined by the Committee in its sole discretion.
>
> . . . .
>
> . . . The Committee, in its sole discretion, may accelerate the vesting of all or any portion of the Restricted Shares, at any time and from time to time.

(Award Agreement 2.)  Section 4 of the Award Agreement states, in pertinent part:  "[I]f the Grantee's rights with respect to any Restricted Shares . . . awarded to the Grantee pursuant to this Award Agreement have not become vested prior to the date on which the Grantee's employment is terminated, the Grantee's rights with respect to such Restricted Shares . . . shall immediately terminate . . . ." (*Id.* at 2.)  The Grant Date of Chapman's award was April 19, 2011, making the Vesting Date April 19, 2014.

Asbury Regional Manager Jeffrey Hicks ("Hicks") terminated Chapman's employment on December 2, 2013, four months prior to the Award Agreement's Vesting Date.  Hicks had attended the March 2011 recognition dinner and knew that Chapman's shares would not vest for three years after the Grant Date.  Chapman contends that, although his "sales were up" and

commensurate with sales at other Asbury dealerships in the market, Hicks set "unrealistically high" sales targets for Chapman's dealership and gave "false information" that Chapman was performing "poorly." (Compl. ¶¶ 17, 23.) Chapman also asserts that Asbury had a custom and practice of not terminating employees in December.

Upon termination, Chapman requested that he "remain employed by Asbury in some capacity" because, in his experience with Asbury, managers were not terminated when another position with the company was available. (*Id.* ¶ 18.) Chapman also informed Hicks that he needed to remain employed with Asbury until April 19, 2014, the Vesting Date, in order to receive his 4,000 shares of Asbury stock. Hicks denied Chapman's request, and, as a result of the termination of his employment, Chapman did not receive the Restricted Shares under the Award Agreement.

### B.    Procedural History

Chapman alleges in the two-count Complaint the following causes of action:  breach of unilateral contract and unjust enrichment. Chapman requests specific performance of the Award Agreement through issuance of the Restricted Shares with outright vesting, lapsing of all restrictions and forfeiture, as well as attorney's fees and costs. Alternatively, Chapman requests judgment in the amount of the proven value of the 4,000 Restricted Shares as of the date of judgment. Chapman also demands pre- and post-judgment interest, costs, and such relief as the Court deems proper.

### III.  Analysis

Asbury contends that this case presents a wrongful termination action repackaged as one for breach of contract and unjust enrichment. (Def.'s Am. Mem. Supp. Mot. Dismiss 1 (suggesting that Chapman attempts to "cloak his dissatisfaction with the termination of his employment as claims of breach of contract and unjust enrichment")). Without acknowledging

this characterization, Chapman firmly pursues his case under theories of breach of contract and unjust enrichment.  Whether Chapman intended to pursue a claim for wrongful termination or claims for breach of contract and unjust enrichment, he fails to state a claim upon which relief can be granted.  For that reason, the Court will grant the Motion to Dismiss and dismiss the case against Asbury.

### A.    Chapman Fails To State A Claim For Wrongful Termination

In the event Chapman intended to allege a claim for wrongful termination, his claim fails. "Virginia is an at-will employment jurisdiction, meaning that an employee may be terminated at any time." *Lester v. TMG, Inc.*, 896 F. Supp. 2d 482, 487 (E.D. Va. 2012) (citing *Dray v. New Mkt. Poultry Prods.*, 518 S.E.2d 312, 313 (Va. 1999)).  However, Virginia courts recognize a narrow exception creating a common law cause of action in tort for "a wrongful discharge claim if the 'termination violates Virginia's public policy,' which is known as the '*Bowman* exception.'" *Id.* (quoting *Wells v. G.R. Assocs., Inc.*, No. Civ. A. 00–1408–A, 2000 WL 33199263, at *2 (E.D. Va. Nov. 22, 2000)).  "[A] plaintiff attempting to assert a '*Bowman* claim' must identify a Virginia statute that the employer-defendant violated by terminating the plaintiff." *Williams v. Va. State Bd. of Elections*, No. 3:11cv863, 2012 WL 2878579, at *8 (E.D. Va. July 13, 2012).

Chapman places no Virginia statute before this Court that Asbury violated by terminating his employment.  Accordingly, any attempt by Chapman to allege a claim for wrongful termination would fail.

**B. Chapman Does Not Plead Facts Plausibly Showing the Existence of a Fully-Performed Unilateral Contract**

Chapman fails to state a claim for breach of unilateral contract because he does not plead facts plausibly showing that he fully performed under the terms of the Award Agreement. Accordingly, no unilateral contract formed between the parties upon which a breach could lie.

Chapman argues that the Award Agreement constituted Asbury's unilateral offer of the Restricted Shares, for which he gave "sufficient consideration" by refraining from quitting "in reliance" on Asbury's "incentive and inducement."[5] (Compl. ¶ 25.) Chapman contends that the Award Agreement therefore constituted a unilateral contract, which Asbury breached when it terminated him "unjustly and unfairly" four months prior to the Vesting Date. (*Id.* ¶ 24.) Additionally, Chapman argues that Asbury violated the implied covenant of good faith and fair dealing when it chose not to accelerate the Vesting Date in bad faith.

Under Virginia law, "[a]n employer can make a unilateral offer to its employees, and the offer becomes a contract when its conditions are fulfilled." *Jensen v. Int'l Bus. Machs. Corp.*, 454 F.3d 382, 387 (4th Cir. 2006) (citing *Nicely v. Bank of Va. Trust Co.*, 277 S.E.2d 209, 212 (Va. 1981)). "Full performance by the employee constitutes acceptance of the offer, and his [or her] previously inchoate rights to receive payments under the plan vest and become legally enforceable." *Nicely*, 277 S.E.2d at 212 (citations omitted). "Prior to acceptance by full performance, an employee has no vested rights in the [plan] . . . ." *Pitts v. City of Richmond*, 366 S.E.2d 56, 58 (Va. 1988) (citing *Nicely*, 277 S.E.2d at 211–13). "[A]n employer can control when an employee's right to an offer vests by imposing conditions through clear statements in

---

[5] Although Chapman frequently references his *reliance* on Asbury's offer in refraining from quitting his employment, he rightly does not specifically claim a cause of action for promissory estoppel. "[P]romissory estoppel is not a cognizable cause of action in [Virginia,]" and the Supreme Court of Virginia has "decline[d] to create such a cause of action." *W.J. Shafer Assocs., Inc.*, 493 S.E.2d 512, 516 (Va. 1997).

the offer." *Jensen*, 454 F.3d at 387 (citing *Hepner v. Am. Fidelity Life Ins. Co.*, 258 S.E.2d 508, 512 (Va. 1979)). Therefore, in order to state a claim for breach of unilateral contract, Chapman must plead facts plausibly showing: (1) that Asbury made an offer for the Restricted Shares;[6] (2) that he fully performed under the terms of the Award Agreement, creating an acceptance; and, (3) that his right to the Restricted Shares vested such that Asbury's refusal to award him the shares or accelerate the Vesting Date constituted a breach of the Award Agreement. *See id.* at 388.

Section 3(a) of the Award Agreement states that the Restricted Shares were to become fully vested on the third anniversary of the Grant Date. Section 4 of the Award Agreement states that the grantee's rights to the Restricted Shares would "immediately terminate" if they "have not become vested prior to the date on which the Grantee's employment is terminated . . . ." (Award Agreement 2.) The parties do not dispute that the Award Agreement governs the issuance of the Restricted Shares, and neither party contends that the agreement contains unclear or ambiguous terms. Chapman alleges that the Grant Date under the Award Agreement was April 19, 2011, and that the Vesting Date was April 19, 2014. Chapman contends that Asbury terminated his employment on December 2, 2013, four months prior to the Vesting Date.

---

[6] Relying on *Jensen*, Asbury argues that the Award Agreement did not constitute a unilateral offer, but only an "announcement of an intention" to award shares. (Def.'s Reply Supp. 6.) In *Jensen*, the language of the documents forming the alleged offer provided that "'this program does not constitute a promise by IBM to make any distributions under it[,]'" and "'[n]o one becomes entitled to any payment in advance of his or her receipt of the payment.'" 454 F.3d at 388 (quoting IBM's employee quota letter "tailoring [its] Sales Incentive Plan to Jensen"). The United States Court of Appeals for the Fourth Circuit held that the documents did not constitute a unilateral offer because "[the employer] did not invite a bargain or manifest a 'willingness to enter into a bargain.'" *Id.* (quoting Restatement (Second) of Contracts § 24). Contrary to the documents in *Jensen*, the Award Agreement contains no such disclaiming language. This Court treats the Award Agreement as a unilateral offer, subject to restrictions on vesting.

Chapman argues that by remaining employed with Asbury for thirty-two (32) months, he gave "sufficient consideration" to render the Award Agreement a binding unilateral contract. (Compl. ¶ 25.) Virginia law, however, clearly provides that an employer may condition acceptance of an offer on the satisfaction of certain conditions, and a contract is not formed until the employee accepts the offer by full performance of those conditions. *Jensen*, 454 F.3d at 387 (citing *Hepner*, 258 S.E.2d at 512 (Va. 1979) (holding that an employee did not have the right to a bonus offered by the employer because the employment contract provided that the bonus would only vest if the employee remained employed on December 1, and the employer terminated employment on November 21)). Plainly, Chapman did not satisfy the vesting condition in the Award Agreement because Asbury terminated his employment four months prior to the Vesting Date. Thus, Chapman fails to plead facts plausibly showing that a unilateral contract formed between the parties.

Chapman seemingly attempts to overcome the fact that Asbury terminated his employment prior to the Vesting Date by arguing that he could not be denied the Restricted Shares without just cause when Asbury terminated his employment. Chapman relies on several inapposite Supreme Court of Virginia cases in which that court generally held, when addressing explicit provisions for dismissal wages, that an employer's offer to award the employee severance pay or a stock bonus constituted a binding contract when the employee remained employed for the time contemplated in the offer. (Pl.'s Mem. Opp'n 4–6 (citing *Dulany Foods, Inc. v. Ayers*, 260 S.E.2d 196, 202 (Va. 1979) (holding that, in the context of a plant closing, an employer's announced policy of severance pay was enforceable when the employees continued working until the plant closed); *Twohy v. Harris*, 72 S.E.2d 329, 335–36 (Va. 1952) (holding that when an employee remained for six years after offering resignation because his employer

promised to award him 10% of the company's stock upon his leaving if he stayed, the offer of stock upon termination was enforceable because the employee refrained from quitting until employment terminated); *Hercules Powder Co. v. Brookfield*, 53 S.E.2d 804, 808–09 (Va. 1949) (holding that an employer's offer to pay dismissal wages "to secure and retain the services of competent employees under difficult and critical labor conditions" constituted a binding contract)).[7]

The Court can distinguish those cases on at least two grounds. First, the employers made offers of additional compensation in exchange for an employee refraining from severing the business relationship. The courts deemed as valuable consideration the retention of employees to ensure an orderly plant shutdown or to prevent resignation. Chapman pleads no facts showing that Asbury contemplated closing the dealership, that he sought to resign, or that he remained at

---

[7] In *Hercules*, the court quoted the Supreme Court of North Carolina with approval for the proposition that an employee may not be deprived of a contract "'without sufficient cause'" when the employer offers additional compensation for employment for a "'specified period of time'" and the employee "'enters upon the service upon that inducement.'" 53 S.E.2d at 808 (quoting *Roberts v. Mays Mills*, 114 S.E. 530, 532 (N.C. 1922)). Chapman relies on this quoted language to argue that Asbury could not "terminat[e] [his] employment in bad faith to deprive him of the restrictive [sic] shares just four months before the vesting date." (Pl.'s Mem. Opp'n 5–6.) Chapman's argument does not persuade.

The court in *Hercules* held: "We agree that the right of discontinuance of the [dismissal wages] plan to any unearned benefit was reserved by [the employer]. Yet, it could not be discontinued and thus deprive the plaintiff of benefits of dismissal salary already earned as of the date of its discontinuance." 53 S.E.2d at 809. In that case, the employee had earned the benefits under the plan because he satisfied the terms of the dismissal wages plan by remaining employed until the plant shut-down ended his employment. *Id.* at 808. Therefore, the employer could not later discontinue those benefits. *Id.* at 809.

Here, Chapman's right to the Restricted Shares had not vested because he did not satisfy the terms of the Award Agreement by remaining employed with Asbury on the Vesting Date. Chapman does not allege in the Complaint that his employment could not be terminated before the Vesting Date, nor could he make such allegations in light of the clear language of the Award Agreement stating that Asbury had *sole discretion* to accelerate vesting of the Restricted Shares. (*See* Award Agreement 2.) Asbury, therefore, retained the right not to award Chapman shares under the Award Agreement. *See Hercules*, 53 S.E.2d at 809; *see also Jensen*, 454 F.3d at 387 (citations omitted).

Asbury due only to the offer in the Award Agreement. Instead, Chapman pleads facts plausibly

showing only that Asbury offered him the prospect of obtaining the Restricted Shares in light of

superior *past* performance in sales and customer service. Second, in each of the above cases, the

employees satisfied the terms of the offers by remaining employed for the contemplated period

of time. In contrast, Chapman did not satisfy the terms of the Award Agreement because his

employment ended four months prior to the Vesting Date.[8]

Because Chapman has not pleaded facts plausibly showing that he accepted Asbury's

offer by full performance, he does not plead facts showing the existence of a unilateral contract.

Thus, Chapman fails to state a claim for breach of unilateral contract. Therefore, the Court will

dismiss Count I of Chapman's Complaint.

### C.   Violation of the Implied Covenant of Good Faith and Fair Dealing Does Not Constitute An Independent Cause of Action Under Virginia Law

Although Chapman does not independently list a cause of action for violation of the

implied covenant of good faith and fair dealing, he references the claim in the body of the

Complaint, alleging that Asbury could not exercise its discretion regarding acceleration of the

Vesting Date in bad faith. To the extent Chapman intended to assert such a cause of action, the

claim fails.

"In Virginia, every contract contains an implied covenant of good faith and fair dealing,"

*Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009), which is

breached when a party "exercise[s] contractual discretion in bad faith." *Virginia Vermiculite,*

*Ltd. v. W.R. Grace & Co.-Connecticut*, 156 F.3d 535, 542 (4th Cir. 1998). An exception exists,

however, for employment contracts—Virginia law "does not recognize a cause of action for

---

[8] To the extent Chapman contends that Asbury could not exercise its discretion regarding acceleration of the Vesting Date in bad faith, the Court addresses Chapman's argument below. *See infra* Section III.C.

breach of an implied covenant of good faith and fair dealing in employment contracts, and in at-will employment contracts in particular." *Devnew v. Brown & Brown, Inc.*, 396 F. Supp. 2d 665, 671 (E.D. Va. 2005).

Because the Court finds that Chapman did not plead that he fully performed under the terms of the Award Agreement, no contract formed, and the Court need not consider Chapman's suggestion that Asbury violated the implied covenant of good faith and fair dealing. *See Enomoto*, 624 F. Supp. 2d at 450 ("In Virginia, the elements of a claim for breach of an implied covenant of good faith and fair dealing are (1) a contractual relationship between the parties, and (2) a breach of the implied covenant.") (citing *Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 466 S.E.2d 382, 386 (Va. 1996)). Even assuming that there existed some sort of employment contract between Chapman and Asbury, a cause of action for breach of the implied covenant of good faith and fair dealing cannot arise in the employment context. *Devnew*, 396 F. Supp. 2d at 671. Neither the existence of the wholly discretionary acceleration clause nor allegations of bad faith alter the Court's analysis. *Harmon v. Dyncorp Int'l, Inc.*, No. 1:13cv1597, 2015 WL 518594, at *13–14 (E.D. Va. Feb. 6, 2015) (rejecting plaintiff's argument that breach of the implied covenant of good faith and fair dealing could arise in an employment context when an employment contract afforded the employer discretionary rights that the employer exercised in bad faith), *aff'd*, 624 F. App'x 104 (4th Cir. 2015). Chapman cites no case holding otherwise. Accordingly, to the extent Chapman asserts a claim for breach of the implied covenant of good faith and fair dealing, the claim fails as a matter of law.[9]

---

[9] Chapman does not otherwise convey how his blanket allegations of bad faith fit into a legal framework that should guide this Court's analysis.

12

**D.      Chapman Fails to State a Claim for Unjust Enrichment**

Finally, Chapman's Complaint fails to state a claim for unjust enrichment for two reasons. First, Chapman fails to plead unjust enrichment in the alternative because his Complaint alleges unjust enrichment only as a result of *the breach* of the Award Agreement. Second, the Complaint fails to identify the benefit Chapman conferred upon Asbury so as to "give [Asbury] . . . fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (third alteration in the original) (citation omitted) (internal quotations marks omitted). Therefore, this Court will dismiss Count II of Chapman's Complaint.

Under Virginia law, in order to state a claim for unjust enrichment, a plaintiff must plausibly allege: "(1) a benefit conferred on the defendant by the plaintiff; (2) the defendant's knowledge that the benefit was conferred; and[,] (3) acceptance or retention of the benefit in circumstances that would make it inequitable for the defendant to keep the benefit without paying for it." *Ford v. Torres*, No. 1:08cv1153, 2009 WL 537563, at *3 (E.D. Va. Mar. 3, 2009) (citation omitted). "A condition precedent to the assertion of [a claim for unjust enrichment] is that no express contract exists between the parties." *Butts v. Weltman, Weinberg & Reis Co.*, No. 1:13cv1026, 2013 WL 6039040, at *3 (E.D. Va. Nov. 14, 2013) (citation omitted). "[I]f an express contract governs the scope of the benefits claimed, then the equitable remedy of [unjust enrichment] will not lie." *Fitzsimmons v. Cardiology Assocs. of Fredericksburg, Ltd.*, No. 3:15cv72, 2015 WL 4937461, at *4 (E.D. Va. Aug. 18, 2015) (citing *Torres*, 2009 WL 537563, at *4). However, under "Virginia and federal law, a plaintiff is permitted to plead equitable theories of relief such as unjust enrichment . . . as alternatives to contract recovery." *Mendoza v. Cederquist*, No. 1:09cv163, 2009 WL 1254669, at *3 (E.D. Va. May 6, 2009) (citing *Torres*, 2009 WL 537563, at *4).

Chapman alleges that "[a]s a result of *breaching* the Award Agreement and depriving Chapman of his awarded 4[,]000 shares of Asbury stock, Asbury itself[,] to the extent it holds Asbury shares, has been unjustly enriched." (Compl. ¶ 34 (emphasis added).) By alleging that the unjust enrichment claim depends upon the existence of the contract that Asbury allegedly breached, Chapman cannot plead unjust enrichment in the alternative to breach of contract. *Cf. Mendoza*, 2009 WL 1254669, at *3 (allowing a plaintiff to plead unjust enrichment in the alternative to recovery on a contract where the plaintiff specifically asserted the claim in the event "'the trier-of-fact determines . . . that there is no express contract that governs . . . the rights of the parties'").

Even if Chapman pleaded unjust enrichment in the alternative, however, the language of the Complaint does not identify the benefit Chapman conferred upon Asbury. Chapman contends that by "remaining employed[,]" he gave "valuable consideration to Asbury" for the Restricted Shares. (Compl. ¶ 26.) He alleges that Asbury, "by failing to exercise sound discretion and authority to compensate [him] for fulfilling the incentive Asbury had made to him to remain in its employ, . . . unjustly enriched itself." (*Id.*) This language suggests that Chapman's continued employment with Asbury constitutes the conferred benefit. In contrast, Chapman's simultaneous assertion that "Asbury itself[,] to the extent it holds Asbury shares, has been unjustly enriched" suggests instead that the conferred benefit was Asbury's retention of the Restricted Shares. (*Id.* ¶ 34.) Due to this ambiguity, the Complaint does not give Asbury fair notice of the grounds upon which Chapman's claim for unjust enrichment rests. *Twombly*, 550 U.S. at 555 (citations omitted). This Court will dismiss Count II of Chapman's Complaint.

## IV.  Conclusion

For the foregoing reasons, the Court will grant Asbury's Motion to Dismiss.  (ECF No. 3.)

An appropriate Order shall issue.

_____
M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date   9/7/16

15