IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOSEPH D. CHAPMAN,

    Plaintiff,

v.                                            Civil Action No. 3:15cv679

ASBURY AUTOMOTIVE GROUP, INC.,

    Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff Joseph D. Chapman's Motion for Leave to File Amended Complaint. (ECF No. 15.) Defendant Asbury Automotive Group, Inc.'s ("Asbury") has responded, (ECF No. 17), and Chapman has replied, (ECF No. 18). This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1332.[1] For the reasons that follow, the Court will deny Chapman's Motion for Leave to File Amended Complaint.

### I. Procedural and Factual Background

#### A.    Procedural History

The Court previously granted Asbury's Motion to Dismiss and closed this case. The Court did not indicate that the dismissal was "without prejudice," thereby ruling, by default, that it was "with prejudice." *See Mueller v. Specialized Loan Servicing*, LLC, 669 F. App'x 644 (4th Cir. 2016) ("In general, absent a contrary intention, a dismissal for failure to state a claim is with prejudice."); *see also Carter v. Norfolk Cmty. Hosp. Ass'n, Inc.*, 761 F.2d 970, 974 (4th Cir.

---

[1] The parties are diverse, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

1985) ("A district court's dismissal under Rule 12(b)(6) is, of course, with prejudice unless it specifically orders dismissal without prejudice."). Chapman, nonetheless, has moved the Court to amend the complaint that the Court previously determined did not state a claim upon which relief can be granted.

Chapman's first complaint alleged two causes of action: (1) breach of unilateral contract; and, (2) unjust enrichment. Chapman's proposed amended complaint asserts two causes of action: (1) breach of contract and implied covenant of good faith and fair dealing ("Count One"); and, (2) unjust enrichment ("Count Two"). Chapman represents to the Court that the proposed amended complaint cures the deficiencies that resulted in dismissal of the first complaint. Asbury opposes Chapman's request for leave to amend. Asbury contends that Chapman's request for leave to amend is improper because the Court's previous decision ended this matter. Alternatively, Asbury argues that leave to amend would be futile.

### B.  Summary of Allegations in the Amended Complaint[2]

Asbury owns the Crown Platform, one of its several companies that operate car dealerships. Chapman commenced employment with Asbury as an automobile sales associate in the Crown Platform in October 1999. Over the next six years, Asbury promoted Chapman several times. In 2005, Chapman became the General Manager of Crown Richmond BMW in Midlothian, Virginia.

At a company-wide recognition dinner in March 2011, Asbury honored Chapman and seven other general managers for top performance based on customer satisfaction, vehicle sales,

---

[2] For purposes of the Motion, the Court will assume the well-pleaded factual allegations in the Amended Complaint to be true and will view them in the light most favorable to Chapman. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Also, for ease of reference, the Court highlights in bold typeface allegations Chapman includes in his Amended Complaint that were not in Chapman's original Complaint.

2

and dealership profitability. Asbury also awarded Chapman 4,000 restricted shares of Asbury stock (the "Restricted Shares"). The Award Agreement governed the stock share award and placed restrictions on the shares, including limitations on transfer, risks of forfeiture, and vesting of Chapman's rights to the shares. Section 3(a) of the Award Agreement states, in pertinent part:

> The Grantee's rights with respect to the Restricted Shares shall become fully vested, and the restrictions set forth in this Award Agreement shall lapse, on the third anniversary of the Grant Date (the "Vesting Date"); provided that the Grantee must be employed as of such Vesting Date, except as otherwise determined by the Committee in its sole discretion.
>
> . . . .
>
> . . . The Committee, in its sole discretion, may accelerate the vesting of all or any portion of the Restricted Shares, at any time and from time to time.

(Award Agreement 2.) Section 4 of the Award Agreement states, in pertinent part: "[I]f the Grantee's rights with respect to any Restricted Shares . . . awarded to the Grantee pursuant to this Award Agreement have not become vested prior to the date on which the Grantee's employment is terminated, the Grantee's rights with respect to such Restricted Shares . . . shall immediately terminate . . . ." (*Id.* at 2.) The Grant Date of Chapman's award was April 19, 2011, making the Vesting Date April 19, 2014.

**In January 2013, Chapman's direct supervisor, Ronald Hodges, retired. Jeffrey Hicks replaced Hodges as Regional Manager[3] and terminated Chapman's employment on December 2, 2013, four months prior to the Award Agreement's Vesting Date.[4] When Hicks became Regional Manager, "it was apparent that he did not want Chapman managing**

---

[3] **Hicks obtained promotion over Matthew Perry. Had Perry been promoted, "Chapman was informed he would have become the General Manager of the Crown Richmond BMW dealership." (Am. Compl. ¶ 16.)**

[4] Hicks had attended the March 2011 recognition dinner and knew that Chapman's shares would not vest for three years after the Grant Date.

3

Midlothian BMW." (Am. Comp. ¶ 19.) Hicks set unrealistic sales targets, insisted that the dealership was underperforming, and threatened Chapman's job every month—even though new auto sales and other measures of profitability had increased.[5]

Upon termination, Chapman requested that he "remain employed by Asbury in some capacity" because, in his experience with Asbury, managers were not terminated when another position with the company was available. (*Id.* ¶ 24.) Chapman also informed Hicks that he needed to remain employed with Asbury until April 19, 2014, the Vesting Date, in order to receive his 4,000 shares of Asbury stock. Hicks denied Chapman's request, and, as a result of the termination of his employment, Chapman did not receive the Restricted Shares under the Award Agreement.

## II. Analysis

Chapman seeks to amend the complaint previously dismissed for failure to state a claim. Chapman asserts that his proposed amendments cure the deficiencies that warranted dismissal in the first instance. In opposition, Asbury argues that the prospect of amendment is unavailable to Chapman because the Court dismissed his complaint "with prejudice." Alternatively, Asbury contends that permitting Chapman's proposed amendments would be futile. Although a plaintiff may, in some circumstances, amend his or her complaint postjudgment, the Court sees no basis for allowing Chapman to do so here. For the reasons articulated below, the Court will deny the Motion for Leave to File Amended Complaint. (ECF No. 15.)

---

[5] Chapman alleges that he would have left in the middle of 2013 had his Restricted Shares already vested. To ensure that he would retain the right to the Restricted Shares, Chapman forwent the opportunity to seek employment at another dealership and worked six days a week instead of five.

4

A. **Legal Standard**

A district court may not grant a postjudgment motion to amend the complaint unless the court first vacates its judgment pursuant to either Federal Rule of Civil Procedure 59(e)[6] or 60(b).[7] "To determine whether vacatur is warranted, however, the court need not concern itself with either of those rules' legal standards." *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 470–71 (4th Cir. 2011). Instead, the court asks "whether the amendment should be granted, just as it would on a prejudgment motion to amend pursuant to [Federal Rule of Civil Procedure] 15(a)." *Id.*

Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court of the United States instructs courts to heed this mandate and freely allow amendments in the absence of considerations such as undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)) ("The law is well settled 'that leave to amend a pleading should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'"). A district court may deny leave to amend when the proposed amended complaint fails to satisfy the requirements of the Federal Rules of Civil Procedure because the

---

[6] "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).

[7] "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for" various reasons, including, but not limited to, "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b).

5

amendment would not survive a motion to dismiss, rendering any attempt to amend futile. *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).

In considering a motion to dismiss for failure to state a claim, the "motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his [or her] claim entitling him [or her] to relief." *Edwards*, 178 F.3d at 244 (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require [ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is plausible on its face," *id.* at 570, rather than merely "conceivable," *id.* Allegations have facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Tobey v. Jones*, 706 F.3d 379, 386 (4th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim."

*Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002)).

### B. The Court's Dismissal "With Prejudice" Does Not Bar Chapman from Filing an Amended Complaint

Although the Court has dismissed Chapman's complaint with prejudice, the Federal Rules of Civil Procedure do not preclude Chapman from seeking leave to amend. The United States Court of Appeals for the Fourth Circuit instructs that a district court may grant a postjudgment motion to amend the complaint if the court first vacates its judgment pursuant to either Federal Rule of Civil Procedure 59(e) or 60(b). See *Katyle*, 637 F.3d at 470–71. However, in evaluating whether vacatur is warranted, the court should ask "whether the amendment should be granted, just as it would on a prejudgment motion to amend pursuant to [Federal Rule of Civil Procedure] 15(a)." *Id.* at 471. Accordingly, the Court's disposition "with prejudice" does not flatly bar Chapman's Motion for Leave to File Amended Complaint, and the Court must determine whether vacatur is appropriate by assessing the proposed amendments "'under the same legal standard as a similar motion filed before judgment was entered—for prejudice, bad faith, or futility.'" *Id.* (quoting *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006)).

### C. Chapman's Proposed Amendments Would Be Futile Because the Amended Complaint Fails to State a Claim Upon Which Relief Can Be Granted

The proposed Amended Complaint asserts two causes of action: (1) breach of contract and implied covenant of good faith and fair dealing ("Count One"); and, (2) unjust enrichment ("Count Two"). Chapman's proposed amendments do not cure the deficiencies that warranted dismissal of the original complaint. Accordingly, the proposed amendments would be futile, and the Court will deny the Motion for Leave to File Amended Complaint.

### 1. Violation of the Implied Covenant of Good Faith and Fair Dealing Does Not Constitute an Independent Cause of Action Under Virginia Law

This Court previously held that Chapman's breach of contract claim failed to state a claim upon which relief could be granted because Chapman did not plead facts showing the existence of a unilateral contract. The Court explained that Chapman's allegations did not plausibly allege that he accepted Asbury's offer by full performance. Chapman has not added or amended allegations that purport to modify that conclusion of the Court, nor does Chapman convey an intention to do so. Instead, Chapman couches what he calls his breach of contract claim entirely in his assertion that Asbury breached the implied covenant of good faith and fair dealing.

Although the first complaint did not independently list a cause of action for violation of the implied covenant of good faith and fair dealing, Chapman referenced the claim in the body of the complaint. There, Chapman alleged that Asbury, in bad faith, exercised its discretion to terminate his employment prior to the Vesting Date. The Court ultimately addressed those allegations and dismissed them, holding that no cause of action for breach of an implied covenant of good faith and fair dealing exists in the at-will employment context in Virginia. Chapman, nonetheless, continues to pursue the cause of action. He advances three theories that purport to undergird his claim:

(a) [Asbury] [a]ct[ed] in bad faith by waiting until Chapman had almost completely performed his obligations under the stock vesting agreement. Asbury terminated Chapman's employment to deprive him of the . . . stock shares for which he had substantially performed.

(b) [Asbury] [e]xercis[ed] in an unsound manner [its] "sole discretion" not to accelerate the vesting of the Restricted Shares upon the termination of Chapman's employment.

> (c) [Asbury] [a]ct[ed] in bad faith by preventing Chapman from completing his substantial performance to remain employed until the vesting of the stock shares. As intended by Asbury, Chapman's expectations were that by . . . remaining employed until vesting he would receive stock shares.

(Am. Compl. 2.) For the same reasons articulated in the Court's first opinion, Chapman's claim fails.

"In Virginia, every contract contains an implied covenant of good faith and fair dealing," *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009), which is breached when a party "exercise[s] contractual discretion in bad faith." *Virginia Vermiculite, Ltd. v. W.R. Grace & Co.-Connecticut*, 156 F.3d 535, 542 (4th Cir. 1998). As this Court previously stated, however, Virginia law "does not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in employment contracts, and in at-will employment contracts in particular." *Devnew v. Brown & Brown, Inc.*, 396 F. Supp. 2d 665, 671 (E.D. Va. 2005); *see also Harmon v. Dyncorp Int'l, Inc.*, No. 1:13cv1597, 2015 WL 518594, at *13–14 (E.D. Va. Feb. 6, 2015) (rejecting plaintiff's argument that breach of the implied covenant of good faith and fair dealing could arise in an employment context when an employment contract afforded the employer discretionary rights that the employer exercised in bad faith), *aff'd*, 624 F. App'x 104 (4th Cir. 2015); *Nisbett v. Reconart, Inc.*, No. 1:16cv1467, 2017 WL 1745045, at *5 (E.D. Va. May 3, 2017) ("[N]either party can cite to a single case that has found the duty of good faith and fair dealing in any employment context.").[8]

---

[8] The *Nisbett* court explained: "[A]lthough some courts have reserved judgement on the possibility that the duty of good faith and fair dealing might apply in contexts where employment contracts are not at-will, they are nonetheless reluctant to do so because of the complications that arise when Courts insert themselves into businesses' employment decisions." 2017 WL 1745045, at *5 (citing *Harik v. Nat'l Aeronautics & Space Admin.*, No. 4:06cv56, 2006 WL 2381964, at *13 (E.D. Va. Aug. 16, 2006) ("[T]he court will not review the 'wisdom or folly' of the defendant's business judgment, or second guess its legitimately based personnel decisions."), *aff'd*, 219 F. App'x 325 (4th Cir. 2007)).

Tellingly, Chapman ignores *Harmon* in his briefing and references *Devnew* only in passing. Chapman does so even though this Court relied on *Harmon* and *Devnew* when dismissing the first complaint. Chapman instead relies on *Pinkerton Tobacco Co. v. Melton*, 437 S.E.2d 923 (Va. 1993), which declined an invitation to resolve the legal before this Court.[9]

Chapman contends that *Pinkerton Tobacco* "declare[s] that [the Supreme Court of Virginia] would entertain the sort of claim plaintiff raised in this action." (Reply Br. 4, ECF No. 18.) It does not. In *Pinkerton Tobacco*, the Supreme Court of Virginia declined to address the employee's argument that allowing his discharge near the end of an award cycle might encourage bad faith conduct by employers. There, a former employee challenged the employer's failure to award pro rata performance credits upon leaving his job. The Supreme Court of Virginia found, however, that it need not reach the issue of bad faith because the employee left with nearly a year remaining in a three-year performance cycle. The *Pinkerton Tobacco* court did not make a ruling on facts akin to those alleged by Chapman because the facts here differ materially. At best for Chapman, the court bypassed the opportunity to completely foreclose the existence of a cause of action for breach of an implied covenant of good faith and fair dealing in employment contracts. That, however, does little to support Chapman's argument.

More importantly, numerous federal district courts applying Virginia law after *Pinkerton Tobacco* have made findings that cut against Chapman's position. These courts have declined invitations similar to Chapman's to extend the scope of the duty of good faith and fair dealing to the employment context. *See, e.g., Nisbett*, 2017 WL 1745045, at *5; *Harmon*, 2015 WL

---

[9] Chapman also relies on *Tymshare, Inc. v. Covell*, 727 F.2d 1145 (D.C. Cir. 1984). In *Tymshare*, the United States Court of Appeals for the District of Columbia hypothesized that "the modern doctrine of 'obligation to perform in good faith'" would apply to all Virginia contracts. No court in Virginia, however—state or federal—has followed *Tymshare* and recognized a cause of action for breach of an implied covenant of good faith and fair dealing in employment contracts.

10

518594, at *13–14; *Devnew*, 396 F. Supp. 2d at 671. While the Court is sympathetic to Chapman's position, it must find the same. Accordingly, Chapman cannot state a claim for breach of the covenant of good faith and fair dealing and any amendment to do so would be futile.

### 2. Chapman Fails to State a Claim for Unjust Enrichment

Chapman omits any reference to his unjust enrichment claim in his briefing before the Court on the Motion for Leave to File Amended Complaint. That failure alone could conceivably warrant dismissal of his unjust enrichment claim.[10] Notwithstanding any possible procedural defect, Chapman fails to state a claim for unjust enrichment upon which relief could be granted. Accordingly, granting Chapman leave to file the Amended Complaint would be futile.

Under Virginia law, in order to state a claim for unjust enrichment, a plaintiff must plausibly allege: "(1) a benefit conferred on the defendant by the plaintiff; (2) the defendant's knowledge that the benefit was conferred; and[,] (3) acceptance or retention of the benefit in circumstances that would make it inequitable for the defendant to keep the benefit without paying for it." *Ford v. Torres*, No. 1:08cv1153, 2009 WL 537563, at *3 (E.D. Va. Mar. 3, 2009) (citation omitted).

The Amended Complaint fails to identify the benefit Chapman conferred *upon Asbury*. Chapman contends that by "by refusing to accelerate the vesting of the 4,000 shares upon Chapman's dismissal, Asbury has enriched itself by increasing the value of its outstanding shares as a result of Chapman's forfeiture." (Am. Compl. ¶ 42.) Stated differently, Chapman alleges

---

[10] Some courts have ruled that a plaintiff's failure to argue a claim constitutes an abandonment of that claim. *See, e.g., Wainright v. Carolina Motor Club, Inc.*, No. 1:03 CV 01185, 2005 WL 1168463, at *13 (M.D.N.C. Apr. 27, 2005) ("Plaintiff's failure to argue this claim is tantamount to abandonment of the claim.").

that Asbury enriched itself by *retaining* the shares it already owned. The Court sees no basis for finding a "benefit conferred" when the parties merely maintained the status quo.[11] Thus, Chapman cannot state a claim for unjust enrichment and his proposed amendments to do so would be futile.

### III. Conclusion

For the foregoing reasons, the Court will deny Chapman's Motion for Leave to File Amended Complaint. (ECF No. 15.)

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 8/3/2017
Richmond, Virginia

---

[11] Where one party fails to carry out a legal obligation (*i.e.*, a contractual duty), the proper remedy is typically a cause of action for breach of contract. Of course, under Virginia law, an employee's rights under a unilateral contract do not vest until the employee completely performs. *See Nicely v. Bank of Va. Trust Co.*, 277 S.E.2d 209, 211–13 (Va. 1981).